This is our third case in the morning. 414-0103 Lipinski v. Law. For the appellate, Mr. Cochran, and the appellee has to waive their presence. You may proceed. Thank you. Good morning. Brevity is the soul of the... Yes. Jessica Lipinski is at somewhat disadvantage in prosecuting her appeal. There was no transcript prepared of the hearing on the motion for summary judgment. And there was also no written order prepared by the trial judge explaining his reason. Normally, we would look then to a bystander's report. But in this case, it just wasn't feasible. So, Mrs. Lipinski represented herself at this hearing and had no idea that down the road she might be asked to recall this and memorialize it in a bystander's report. But we do have an extensive record to go by. And I think when you look at that record, there's only one possible explanation for the trial judge's granting summary judgment in this case. And that is that the judge accepted the defendant's law's argument that the continuity of possession had been broken by this 2005 Burke County letter from an attorney. But that's simply not the case under Illinois law. And we set this out in our reply brief. I think that whole episode, rather than break the continuity, confirms it. And the end result of that was Mrs. Lipinski telling her neighbors to stay off her property. And she continued her possession, the same as she had always had. And when you look at the Rolla case that we cited in our reply brief, there certainly was no change in sentiment on the part of Mrs. Lipinski. And all that was argued to the trial court, which you're suggesting to us here? I mean, and my question is, how could the court conclude there was no factual issue? I don't know. I was not involved in the trial proceeding. I was brought on after the notice of appeal was filed. Isn't the technical term for that the guy who follows the elephants in the parade? Right. Watch where you step. I realize this record is very convoluted and hard to understand because Mrs. Lipinski went in and out of representing herself and filed a number of motions, some of which made sense, some of which would leave your head scratching. So I don't know what all arguments were made in there. But I just think based on what's in the record, there certainly are factual disputes, questions, conflicting affidavits that would render granting summary judgment inappropriate in ending this case at its juncture. Counsel, I couldn't tell from the briefs, but when the court granted the summary judgment for defendant here, did the court actually ascertain where the property line was or make a determination because these conflicting surveys as to where the line is? I don't know because all I could see the same as your honors is the docket entry. It says heard arguments and grant the motion for summary judgment on all counts. Well, don't we need to know where the line is to determine whether we have an adverse possession case? Well, I think there's enough factual allocations in the record. There's at least four surveys that identified and surveyed the actual location of this division fence. So I think it's very clearly defined, not just in terms of where it is, but actual surveyors' notes and survey descriptions. So the boundary, I think, is clearly defined as to where the plaintiff is claiming to. The boundary is clearly defined? Right. There's four surveys. By which survey then? That's what I'm trying to figure out here. Which survey defines it? I think there was a 1978 survey. There was a nail survey done in 2005 that all confirmed. I think they're referenced in our original briefs. The two most recent surveys are the Hudson survey and the nail survey, right? Correct. And they don't establish the line at the same location, do they? No. Okay, so which one is... That's why I think we need an evidentiary hearing to have the surveyors come in and listen to their testimony. Well, would it be your position that even if the surveys can't clearly establish the line, given that they're effectively competing experts, that your client has exerted control over this land, so that it's either hers or she gets it under adverse possession? Right, and I think the surveyors are in agreement as to where the survey line is for this division fence. The issue is whether that's the line, or as the laws assert, it's the section line, or where their surveyors locate the section line. And even there, there's a controversy on actually where the section line is, according to different surveys. So what you hope is that we reverse and some new trial judge, which is probably the reason Judge Ondergan retired, will have to face this case. Drum him off the bench, is that what happened here, counsel? I don't think so. Maybe other cases. This may have contributed, because I can sense his frustration in dealing with a lot of these motions that were filed. One of the things I looked at, just quickly, is the Pinkerton affidavit, which isn't even plaintiff's affidavit. She gets an affidavit from the guy that cut the trees. And that's in 2009. That shows that there's activity after 2005. The Bert, what is it, Bert and Eddie, is that the letter? She's continuing to exert control over the project. Yeah, I think there's also her affidavit that she, you know, she placed the deer stand and mowed it as well. But Pinkerton Wright is a third party affidavit that he was in. Yeah, I came on and she paid me and I did what you were. So you think we should reverse? Yes, I do. And hopefully the next round will be much more organized. Is your client resolved that maybe this practicing well herself is like performing surgery on herself? I think she's well aware of that now. Well, good. Is there any prospect for a resolution of the matter? I think there might be. It's like a lot of these property disputes. It's hard to believe they get in this far along with the amount of feet involved, not even acres. I mean, so I mean, I would certainly think, encourage the parties to explore that. And hopefully it wouldn't be, obviously, back here. Well, what precipitated that was the fence wall, wasn't it? Where, you know, basically you walk up to the fence, it's on your right, you're responsible for taking care of that part of the fence. My name. Responsible for the other part of the fence. So there could be, it could be the cost of actually maintaining this fence. Well. Which maybe makes it worth it. I think what really precipitated is when these new dependents bought the property. And they kind of came and said, okay, we're not going to accept that. We're going to say it's over here. Which in essence eliminates their access to the property. Or their accepted access. Well, I think our questions and our approach has showed you that we don't think there's a dispute. A factual dispute. Right. Is there anything further you'd like to make us aware of? I don't believe so. And will you mark this down as one of your briefest and most pleasant arguments? Yes, I will. Thank you. I greatly appreciate it. Take the matter under advice. Okay, thank you.